# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CAMELIA J. BOYKIN, Individually )
and as the Personal Representative )
of the Estate of CARL W. BOYKIN, )
Deceased, )
1805 Kimberly Woods Lane )
Fort Washington, MD  20744 )
                               )
       Plaintiff, )
                               )
       v. )     Case No. 1:17-cv-02569 (TJK)
                               )
UNITED STATES OF AMERICA )
                               )
<u>Serve</u>: )
                               )
JESSIE K. LIU, in her official )
Capacity as United States Attorney )
  for the District of Columbia )
    United States Attorney's Office )
555 – 4th Street, N.W. )
Washington, DC  20530 )
                               )
-and- )
                               )
JEFFERSON BEAUREGARD )
SESSIONS, in his official capacity )
  as the Attorney General of the )
  United States Department of Justice)
950 Pennsylvania Avenue, N.W. )
Washington, DC  20530-0001 )
                               )
-and- )
                               )
DANIEL C. RATTRAY, in his official )
Capacity as Chief Counsel for the )
North Atlantic District South )
Office of Chief Counsel )
Department of Veterans Affairs )
251 Main Street )
Winston-Salem, NC  27155 )
                               )
       Defendant. )

## AMENDED COMPLAINT

Plaintiff Camelia J. Boykin, Individually and as the Personal Representative of the Estate of Carl W. Boykin, Deceased, by and through her attorney, Ernest W. McIntosh, respectfully represents as follows:

### I.  JURISDICTION AND VENUE

1.      This is an action arising under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq.  Jurisdiction is also based on 28 U.S.C. § 1346(b)(1).  Venue is proper pursuant to 28 U.S.C. § 1402(b).

### II. PARTIES

2.      At all times relevant hereto, Plaintiff's Decedent, Carl W. Boykin, and Plaintiff Camelia J. Boykin were husband and wife and adult residents of the State of Maryland, residing at 11805 Kimberly Woods Lane in Fort Washington, MD 20744, in Prince George's County.

3.      Defendant United States of America ("USA") is named in its capacity as the employer of the employees and agents at the medical facility known as the Washington DC Veterans Affairs Medical Center ("hereinafter DC VAMC") through its Department of Veterans Affairs.

4.      At all times relevant hereto, Vincent G. Desiderio, M.D., an orthopedic surgeon, acting within his capacity as an employee of the DC VAMC, provided medical care for Plaintiff Carl W. Boykin.

5.      At all times relevant hereto, Vincent G. Desiderio, M.D., acting within the scope of his employment, caused or contributed to causing Plaintiff's Decedent,

2

Carl W. Boykin's injuries, as alleged herein.

### III.  FACTS COMMON TO ALL COUNTS

6.     Plaintiff incorporates and realleges paragraphs 1-5, above, as if fully set forth herein.

7.     Carl W. Boykin and Camelia Jean Boykin are husband and wife, having been married since February 1975.

8.     As a Vietnam veteran, Plaintiff's Decedent, Carl W. Boykin, was entitled to and received medical care at the DC VAMC, located at 50 Irving Street, N.W., Washington, D.C.

9.     On October 20, 2014, Mr. Boykin called the "Advice Line" to inform his primary care provider ("PCP") that his knees were bothering him and giving up on him.  He requested an orthopedic consultation and an order for X-rays.  Nurse Practitioner Flora T. Peri returned Mr. Boykin's call and ordered an X-ray of the right knee.

10.     X-rays of Mr. Boykin's right knee were obtained on October 21, 2014. Under "Clinical History," it stated "right knee pain more than 4 months, noticing increase pain and swelling for the past month.  No trauma/injury."

11.     The radiologist's impression of the knee x-rays was "[m]ild medial and lateral compartment arthropathy," a component of degenerative joint disease.

12.     On October 22, 2014, Nurse Practitioner Flora T. Peri contacted Mr. Boykin and scheduled an appointment for him with Orthopedics.

13.     On December 9, 2014, Plaintiff Mr. Boykin was examined by Vincent

G. Desiderio, M.D., an Orthopedic Surgeon and Medical Director at DC VAMC.  In

the medical record he prepared, Dr. Desiderio noted:

> "R knee pain several months.  No trauma.  Pain with certain
> activities.  Located lat anterior muscle compartment."

Dr. Desiderio's physical examination noted:

> "R knee nl [normal] exam.  Prob muscle hernia over prox ant
> muscle.  Min tender x-ray wnl [within normal limits].

Dr. Desiderio's assessment was "prob [probable] muscle hernia prox muscle."  Dr.

Desiderio's Plan stated:

> "observe for now.  brace as needed.  f/u 3-4 mo [i]f needed."

14.     On July 23, 2015, Mr. Boykin contacted nurse practitioner Peri to

request a consult for Physical Therapy, as recommended during a physical

examination a month earlier.  According to the medical record prepared by Nurse

Practitioner Peri, Plaintiff Mr. Boykin was diagnosed with "lateral anterior muscle

compartment syndrome" in December 2014, when he was evaluated by Dr.

Desiderio.

15.     On August 19, 2015, Mr. Boykin contacted the Advice line and

requested a referral to an outside facility for Physical Therapy since no

appointment had yet been scheduled for Physical Therapy within the DC VAMC.

16.     On August 26, 2015, Nurse Practitioner Peri spoke with Mr. Boykin

by telephone and indicated she requested an "E-consult rehab medicine for advice."

In her request, the nurse practitioner stated:

> "Right knee pain for more than 2 yrs, … [H]e was diagnosed with Lateral
> anterior muscle compartment syndrome in 12/2014, evaluated by Ortho at

that time.  They advised to rtc [return to clinic] in 3-4 mon as needed.  Now c/o Pain with certain activities.  Muscle right calf thicker than left calf.  He prefers to receive PT, appt given Sept 29, 2015."

17.     Because he felt that the physicians and staff at the VA were ignoring or not resolving the increasingly painful lump on his leg, on September 18, 2015, Mr. Boykin went to John Klimkiewicz, M.D., an orthopedic surgeon associated with the Georgetown University Medical Center, to obtain a second opinion regarding the cause of the painful lump on his right calf and how to treat it.

18.     An MRI done on September 27, 2015, showed a heterogeneous mass (tumor) primarily within the proximal anterior compartment of the right leg, although it did expand somewhat into the posterior compartment.

19.     Dr. Klimkiewicz referred Mr. Boykin to Brock Adams, M.D., an orthopedic surgeon with subspecialty training in orthopedic oncology at MedStar Washington Hospital Center, who saw him on October 12, 2015.  Mr. Boykin related to Dr. Adams that he "had feelings of swelling in his anterior right leg" and that most recently, he noticed a discrete mass in that area that continued to grow slowly.  He said that he had some discomfort but no particular pain, but that he recently developed some paresthesias ("pins and needles") and occasional shooting pains down into the back and sides of his right foot.

20.     Dr. Adams' physical exam noted a "quite firm mass" in the anterior compartment of the leg extending from the proximal-most aspect of this down about 10 cm.  Dr. Adams noted that the heterogeneous enlarging mass in the anterior compartment of the right leg was "certainly concerning" for sarcoma so Dr.

Adams had a core needle biopsy performed of the mass and, to expedite the patient's treatment, also ordered staging studies, a CT scan of his chest and a whole-body bone scan.

21.     The Surgical Pathology Report's Final Diagnosis of the core needle biopsy of the right front leg performed on October 12, 2015, was "Myxoid liposarcoma with focal hypercellularity."

22.     A whole-body bone scan was performed on October 13, 2015. Abnormal activity was noted in the right proximal (central) lower leg along the lateral (side) aspect.  An MRI and CT scan revealed a 12.3 x 5.3 x 6.6 cm (4-3/4" x 2-1/16" x 2-3/8") intramuscular mass in the tibialis anterior (calf) muscle.

23.     At the request of Dr. Adams, on October 22, 2015, Mr. Boykin was referred to Adedamola Omogbehin, M.D., a radiation oncologist at the Washington Cancer Center at Medstar Washington Hospital Center.  Dr. Adams asked Dr. Omogbehin to determine whether radiation treatments would possibly shrink and downstage Mr. Boykin's lesion prior to undergoing a surgical resection (removal).  As a result, Mr. Boykin underwent 25 radiation treatments between November 2 and December 7, 2015.

24.     Prior to surgery, another MRI of Mr. Boykin's lower extremities was performed on December 23, 2015, which showed a heterogeneous intramuscular mass (tumor) measuring 4.9 x 6.5 x 11.1 cm (1-15/16" x 2-9/16" x 4-3/4").  The tumor was centered within the muscle of the right lower leg which enables the foot to move up and down and extended into the subcutaneous deep fascia.  There was also

questionable tumor infiltration into adjacent muscles and the peroneal nerves.

25.     On December 28, 2015, Mr. Boykin saw Dr. Adebayo Ajayi and Dr. Adams for follow-up evaluation after completing the initial course of radiation therapy.  At that time, Mr. Boykin told Dr. Adams that the mass felt somewhat smaller, but not much.  He also complained that since the beginning of the radiation therapy, he was experiencing radiating numbness and pain on his left lower extremity which had progressed to his upper extremity and that the pain was waking him up consistently every night.  Dr. Adams noted that an MRI of the right leg showed a small decrease in the size of the tumor when compared to previous imaging.  It was decided to wait another week to see if the tumor decreased any further but that, in any event, surgery would proceed with wide excision of the tumor.

26.     Surgery was performed by Dr. Brock Adams on January 7, 2016, who performed a wide excision of Mr. Boykin's' deep right anterior leg mass. Tissue measuring approximately 12 cm. in diameter (4-3/4") was removed, along with the anterior tibial artery and vein.

27.     The Pathology Report's final diagnosis of the right leg mass that was surgically removed showed myxoid liposarcoma.  The mass that was removed was found to be up to 10.5 x 5.3 x 4 cm in size, although additional tissue was also removed.

28.     An MRI of the lumbar spine was performed on January 14, 2016, for lower back pain radiating to the lower extremities.  The MRI's findings were

consistent with metastases to the bones at the T11 and S1 levels of Mr. Boykin's spine. The S1 lesion extended into the space around the spinal nerves and was compressing the sacral nerve roots and extending into the left S1-2 neural foramen and abutment of the left S1 nerve root.

29.    Mr. Boykin returned to Dr. Brock Adams on January 22, 2016. Dr. Adams' office note reflects that Mr. Boykin was experiencing significant pain and numbness radiating into his left leg at that time. Dr. Adams discussed the lesions discovered to the bones at the T11 and S1 levels of Mr. Boykin's spine and advised a biopsy of the lesions. He also discussed the implications of the metastatic lesions as they related to Mr. Boykin's prognosis.

30.    On January 28, 2016, a CT-guided fine needle aspiration and a core biopsy of the sacrum (a bone in the lower back between the hipbones) were performed, and metastatic spindle cell sarcoma with myxoid features, consistent with myxoid liposarcoma, was diagnosed, confirming metastatic disease within the sacrum.

31.    On February 5, 2016, Mr. Boykin returned to Dr. Adams. He was experiencing pain radiating to both legs with associated paresthesias. Dr. Adams ordered an MRI of the remainder of the spine, including the sacrum, as well as the thoracic and cervical spine. He referred Mr. Boyd back to Drs. Omogbehin and, ultimately, to Dennis A. Priebat, M.D., the Director of Medical Oncology at Medstar Washington Hospital Center, for additional radiation and systemic treatment (chemotherapy), respectively.

32.     The MRI of the thoracic spine performed on February 11, 2016, found "diminished signal intensity of the marrow" and focal lesions at T9 and T12 of the spine worrisome for metastatic disease."

33.     The MRI of the pelvis, also performed on February 11, 2016, found

>   1.  Masslike marrow replacement involving the S1 and S2 vertebral body with associated soft tissue mass, greatest anteriorly, consistent with patient's known metastatic myxoid liposarcoma. The mass involves the majority of the sacral vertebral bodies with extension to the S1 sacral foramina.
>   2.  Two additional pelvic lesions with signal characteristics similar to the sacral lesion, one within the right intertrochanteric region and the second within the left posterior superior acetabulum, are suggestive of additional metastatic lesions.

34.     On February 12, 2016, Plaintiff Mr. Boykin returned to Dr. Omogbehin, who recommended a palliative (or pain-reducing rather than curing) course of radiation therapy to the sacrum.  Mr. Boykin then underwent CT-guided simulation to determine the exact area(s) to target in advance of a course of therapy over the next 2-3 weeks.

35.     On February 17, 2016, at the request of Drs. Adams and Omogbehin, Mr. Boykin was referred to Dennis A. Priebat, M.D., for further evaluation and treatment of the myxoid liposarcoma.  Dr. Priebat reviewed Claimant's CT scans and MRIs with Dr. Thomas S. Dziedzic, the Director of Musculoskeletal Radiology at MedStar Washington Hospital Center.  It was determined that Mr. Boykin had metastasis to multiple bones with a large sacral mass causing neurologic problems and pain and that he also had lesions outside the sacral area, which necessitated systemic chemotherapy and radiation.

36. Dr. Priebat advised Mr. Boykin and his wife that Mr. Boykin had metastatic disease and that his treatments would not be curative, but palliative (pain-relieving). He ordered additional blood work and a PET scan. The decision regarding whether to treat first with chemotherapy or to utilize radiation first to the sacral head followed by chemotherapy was contingent upon Mr. Boykin's response to pain medication and the results of the PET scan (chemotherapy was preferred because the radiation could interfere with his body's response to the spreading cancer).

37. The PET scan and another MRI performed on February 19, 2016, included abnormal findings involving T9, T12, the sacrum, and the superior posterior left acetabulum (socket in the hip bone where the head of the femur sits) highly suspicious for metastatic disease.

38. Mr. Boykin returned to Dr. Priebat on February 23, 2016. Dr. Priebat's note for that date indicated that the nuclear medicine MRI-PET scan showed activity in the already known sacral area, intertrochanteric area on the right, the upper left femur and the T8 and T11 vertebral bodies. Dr. Priebat recommended that he see Dr. Omogbehin to consider starting radiation oncology.

39. On February 29, 2016, Mr. Boykin also sought a second opinion from Dr. Christian Meyer at Johns Hopkins, who concurred with the diagnosis and the current course of treatment.

40. On March 7, 2016, Dr. Adams diagnosed right foot drop (difficulty lifting the front part of the foot, causing dragging of the front of the foot on the

10

ground while walking) after sarcoma resection and ordered a custom right AFO (ankle foot orthosis).

41.     Mr. Boykin has since undergone many additional radiation therapies and numerous courses of chemotherapy (including at least two courses with trial or experimental medication) with different agents to halt the continued spread of the cancer throughout his body.  He also consulted with physicians at the Memorial Sloan Kettering Cancer Center to determine whether he was a candidate for any clinical trials to halt or slow down the cancer spreading throughout his body and participated in a study at the National Institutes of Health.

42.     Mr. Boykin developed a lesion in his lungs, which has required the placement of a drainage system for removal of excess fluid. He also had a lesion in his chest wall and was continually evaluated for further metastases to determine whether additional chemotherapy or radiation would be effective.  He had Stage IV cancer, which is rarely curable, and received palliative care in an effort to extend his life.

43.     On February 1, 2017, Plaintiffs, through counsel, filed an administrative claim against the Department of Veterans Affairs with the Chief Counsel's Office in Winston-Salem, North Carolina.

44.     Plaintiffs' administrative claim was denied by the Department of Veterans Affairs on June 26, 2017.

45.     Plaintiffs filed their Complaint on November 30, 2017. At that time Carl W. Boykin's medical situation had not been resolved. He was

receiving medical care and incurring damages. That situation was newly discovered and was not reasonably discoverable at the time his claim was originally presented.

46.     Plaintiff's Decedent, Carl W. Boykin, died as a result of metastatic myxoid liposarcoma to his lung and bones on May 4, 2018.

## COUNT I - NEGLIGENCE

47.     Plaintiff hereby incorporates by reference paragraphs 1-46, inclusive, as though fully set forth herein.

48.     From October 2014 through October 2015 and at all times relevant hereto, the United States of America, through the Department of Veterans Affairs, owned and operated a health care facility known as the DC VAMC.

49.     The DC VAMC, acting through its agents and/or contractors and/or employees, including, but not limited to, Vincent G. Desiderio, M.D., and Nurse Practitioner Flora T. Peri, agreed and/or undertook to provide medical care to Carl W. Boykin in a careful, competent and skillful manner.

50.     At all times relevant hereto, the DC VAMC held itself out as a hospital equipped and staffed with highly-qualified medical personnel providing state-of-the-art medical care.

51.     The DC VAMC, acting through its agents and/or contractors and/or employees, including, but not limited to, Vincent G. Desiderio, M.D., and Nurse Practitioner Flora T. Peri, was negligent in doing or failing to do any or all of the following, all of which constitute negligence and a breach of the duty of care owed to

Plaintiff's Decedent, Carl W. Boykin:

    a.    Possess the requisite skill, knowledge and training to promptly and properly assess, diagnose and treat the bump on Mr. Boykin's leg, especially because of his history of serving in Vietnam and being exposed to Agent Orange (an herbicide/defoliant chemical used during the Vietnam War) and Agent Orange's know association with soft tissue sarcomas;

    b.    Conduct the examinations and tests necessary to diagnose the bump on Mr. Boykin's leg, including, but not limited to, ordering/ performing an ultrasound and/or an MRI to aid in the diagnosis of his sarcoma;

    c.    Perform a biopsy of the "bump" in order to diagnose the cause of it and how best to treat it; and

    d.    Detect and diagnose the "bump" as early as possible to improve Mr. Boykin's chances of recovery.

52.    As a direct and proximate result, Plaintiff's Decedent, Mr. Boykin's cancer remained undiagnosed from October 20, 2014, to October 12, 2015, a period of one (1) year.

53.    As a direct and proximate result of the acts and omissions of the DC VAMC and its agents and/or contractors and/or employees, including, specifically, Vincent G. Desiderio, M.D., and Nurse Practitioner Flora T. Peri, Plaintiff's Decedent, Carl W. Boykin, was injured, experienced physical pain and suffering,

emotional distress, mental anguish, disfigurement, humiliation, embarrassment and loss of enjoyment of life. He also incurred medical expenses and will incur medical expenses in the future.

WHEREFORE, Plaintiff Camelia Jean Boykin demands that a determination that the United States of America, through the Department of Veterans Affairs and the physician(s), nurse practitioner(s) and/or any other employees, agents and/or servants at the DC VAMC who rendered care to Plaintiff's Decedent, Carl Boykin, are jointly and severally liable to Plaintiff and demand an award of Six Million ($6,000,000.00) Dollars to compensate them for their injuries and damages, interest, costs and such other relief as this Court deems just and proper.

## COUNT II - NEGLIGENCE *PER SE*

54. Plaintiff hereby incorporates by reference paragraphs 1-53, inclusive, as though fully set forth herein.

55. Myxoid liposarcoma is a cancer of connective tissues, "presumed" by the Veterans Administration to be related to exposure to Agent Orange, first used in Vietnam, or other herbicides.

56. In accord with 38 U.S. Code § 1116, starting in the early 1990s, the federal government directed the Institute of Medicine, now known as the Health and Medicine Division of the National Academies, to issue reports every two (2) years on the health effects of Agent Orange and similar herbicides. Their report, entitled, Veterans and Agent Orange, assessed the risk of both cancer and non-

cancer health effects.

57.     Each health effect was categorized as having one of the following: sufficient evidence of association; limited/suggestive evidence of an association; or inadequate/insufficient evidence to determine whether an association exists.

58.     In the last published update from 2014, which was published in 2016, the link between soft tissue sarcoma and Agent Orange exposure is categorized as "Sufficient evidence of an association."

59.     Mr. Boykin served in Vietnam from December 1969 to November 1970.

60.     Plaintiff alleges that the Washington DC VAMC, by and through its agents, contractors and/or employees, including, specifically, Vincent G. Desiderio, M.D., and Nurse Practitioner Flora T. Peri, had a duty to, but failed to, be aware of the association between Agent Orange and sarcoma and to instruct its agents and/or contractors and/or employees, including, specifically, Vincent G. Desiderio, M.D., and Nurse Practitioner Flora T. Peri, of the need for vigilance in investigating "bumps" in patients who served in Vietnam, like Carl Boykin.

61.     Plaintiff further alleges that the DC VAMC and its agents and/or contractors and/or employees, including, specifically, Vincent G. Desiderio, M.D., and Nurse Practitioner Flora T. Peri, failed to protect Carl W. Boykin because they violated the purpose and intent of the statute and the VA, itself.

62.     As further evidence of negligence *per se*, Mr. Boykin was called by Charles J. Faselis, the Chief of Medical Service at the DC VAMC, on July 11, 2016, because, in compliance with an "Institutional Disclosure of Adverse Event," Dr.

Faselis was required to communicate to Mr. Boykin regarding the "adverse event" of the delay in diagnosing Mr. Boykin's sarcoma.

63.     As a direct and proximate result of the acts and omissions of the DC VAMC and its agents and/or contractors and/or employees, including, specifically, Vincent G. Desiderio, M.D., and Nurse Practitioner Flora T. Peri, Plaintiff's Decedent, Carl W. Boykin was injured, experienced physical pain and suffering, emotional distress, mental anguish, disfigurement, humiliation, embarrassment and loss of enjoyment of life.  He also incurred medical expenses and will incur medical expenses in the future.

WHEREFORE, Plaintiff Camelia Jean Boykin demands that a determination that the United States of America, through the Department of Veterans Affairs and the physician(s), nurse practitioner(s) and/or any other employees, agents and/or servants at the DC VAMC, are jointly and severally liable to Plaintiffs and demand an award of Six Million ($6,000,000.00) Dollars to compensate them for their injuries and damages, interest costs, and such other relief as this Court deems just and proper.

## COUNT  III - LOSS OF CONSORTIUM

64.     Plaintiff hereby incorporates by reference paragraphs 1-63, inclusive, as though fully set forth herein.

65.     Plaintiff's Decedent, Carl W. Boykin, was married to Plaintiff Camelia Jean Boykin from February 1975 until his death on May 4, 2018.  They have three (3) adult children and one (1) grandchild.

16

66.     As a result of the negligent diagnosis and treatment of Plaintiff's Decedent, Carl W. Boykin, Plaintiff Camelia Jean Boykin has suffered loss of consortium including, but not limited to, material services, love, affection, companionship and the customary amenities of married life.

WHEREFORE, Plaintiff Camelia Jean Boykin demands that a determination that the United States of America, through the Department of Veterans Affairs and the physician(s), nurse practitioner(s) and/or any other employees, agents and/or servants at the DC VAMC, are jointly and severally liable to Plaintiff Camelia Jean Boykin and demands an award of Six Million ($6,000,000.00) Dollars to compensate her for her injuries and damages, interest, costs and such other relief as this Court deems just and proper.

## COUNT IV – WRONGFUL DEATH

67.     Plaintiff hereby incorporates by reference paragraphs 1 through 66 as though fully set forth herein

68.     The death on May 4, 2018, of Carl W. Boykin was directly and proximately caused by the negligence of the above-named Defendants.

69.     Carl W. Boykin left a wife and three (3) children who are entitled to recover damages for his death and on whose behalf this action is brought.

70.     Defendants' negligence was a direct and proximate cause of the severe conscious pain and suffering which ultimately resulted in Carl W. Boykin's death.

71.     D.C. Code Annotated §16-2701, commonly referred to as the "Wrongful Death Act", provides for the recovery by the next of kin of pecuniary losses

including, but not limited to, medical, hospital, funeral, burial, administration, financial support, gifts and other contributions and other expenses, as well as the loss of the reasonable value of decedent's services, including, but not limited to, loss of care, education, training, transportation, guidance, support, assistance, comfort, society, personal advice and maintenance, which have been sustained or will be sustained in the future.

72.     As a result, Plaintiff Camelia J. Boykin, Carl W. Boykin's next-of-kin, has suffered damages recoverable under the "Wrongful Death Act" and is entitled to recover such damages as a result of the negligence of the Defendants.

WHEREFORE, Plaintiff Camelia Jean Boykin demands that a determination that the United States of America, through the Department of Veterans Affairs and the physician(s), nurse practitioner(s) and/or any other employees, agents and/or servants at the DC VAMC, are jointly and severally liable to Plaintiff Camelia Jean Boykin and demands an award of Six Million ($6,000,000.00) Dollars to compensate her for her injuries and damages, interest, costs and such other relief as this Court deems just and proper.

## COUNT V – SURVIVAL ACTION

73.     Plaintiff hereby incorporates by reference paragraphs 1 through 72, as though fully set forth herein.

74.     The wrongful and negligent acts of Defendants were such that, if Carl W. Boykin's death had not ensued, these acts would have entitled Plaintiff's Decedent to maintain an action at law and he would have been able to claim

damages against Defendants himself.

75.     Plaintiff's Decedent, Carl W. Boykin, died on May 4, 2018, and his claim for damages occasioned directly and proximately by the injuries aforesaid, including the value of reasonable and necessary medical and hospital services and funeral expenses, an allowance for pain, suffering, mental and emotional distress, inconvenience and discomforts endured, passed under the Survival Action for the District of Columbia to Plaintiff Camelia J. Boykin, as Petitioner to be appointed Personal Representative of Carl W. Boykin's Estate.

WHEREFORE, Plaintiff Camelia Jean Boykin demands that a determination that the United States of America, through the Department of Veterans Affairs and the physician(s), nurse practitioner(s) and/or any other employees, agents and/or servants at the DC VAMC, are jointly and severally liable to Plaintiff Camelia Jean Boykin and demands an award of Six Million ($6,000,000.00) Dollars to compensate her for her injuries and damages, interest, costs and such other relief as this Court deems just and proper.

Respectfully Submitted,

_____/s/_____
Ernest W. McIntosh (Bar No. 315309)
_____/s/_____
Anthony G. Newman (Bar No. 384809)

NEWMAN & McINTOSH, LLC
1331 H Street, N.W., Suite 902
Washington, DC  20005
(202) 638-1331
emcintosh@newmanmcintosh.com
anewman@newmanmcintosh.com

Counsel for Plaintiffs